John FIRE, etc.

v.

CITY OF WINNER, etc., et al.

Civ. No. 22W.

United States District Court,
D. South Dakota.

Dec. 18, 1972.

Richard A. Smith, Rosebud, S. D., for plaintiff.

John J. Simpson, Winner, S. D., for defendants.

## MEMORANDUM DECISION

BOGUE, District Judge.

On April 21, 1971, Plaintiff, John Fire, brought this action on behalf of himself and all persons similarly situated, for injunctive relief and damages against the City of Winner, South Dakota, and the various officers of the city, claiming invidious discrimination on the part of the defendants in failing and refusing to construct and maintain adequate streets, sidewalks, street lights, gutters and drainage systems, and sewerage, water and fire-hydrant facilities in that portion of the city commonly referred to as "Indian Town".

By an amended complaint filed on September 13, 1971, the class action was dropped and the class withdrew all claims of discrimination. A trial was held on August 9, 1972, at the conclusion of which the Court reserved its ruling and asked for post-trial briefs.

■■ To be considered at the outset is defendants' contention that the Court lacks jurisdiction over the City of Winner and its officers for the reason that the city is not a "person" within the meaning of 42 U.S.C.A. § 1983. While it is true that a municipality is not subject to legal liability under § 1983, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Davis v. United States, 439 F.2d 1118 (8th Cir. 1971), a municipality is a "person" under § 1983 for purposes of injunctive relief. Harkless v. Sweeny, 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Hawkins v. Town of Shaw, 437 F.2d 1286 (5th Cir. 1971); Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir. 1971); Dailey v. City of Lawton, 425 F.2d 1037 (10th Cir. 1970). Since Plaintiff's original and amended complaints include a prayer for injunctive relief, this Court retains jurisdiction.

■ The evidence reflects that "Indian Town" is a part of the Wilson Park Addition to the City of Winner, South Dakota, bounded by a line extending

east from the intersection of First and Liberty Streets along First Street to East Park Street, north on East Park Street to the railroad tracks, then west along the railroad tracks to North County Road, then south to Dakota Street, east along Dakota Street to Liberty Street, and finally south along Liberty Street to First Street and the point of origin. Of the 138 residents of "Indian Town", approximately 98 are Indians, two of whom own their own homes. One of the two Indian homeowners is Plaintiff's wife.

There being storm sewers located along one street only, the primary drainage for the City of Winner consists of a "natural" drainage system. For the western one-half of the town, this "natural" drainage is generally to the north and west. Indian Town, being on the northern part of the city, is the recipient of most of the drainage from the western half of the city; especially from Park Addition. Because the land is extremely flat, the drainage from Indian Town to Dog Ear Creek is rather slow after a spring thaw or heavy rainstorm, with the result that water collects in the ditches and low areas. Plaintiff claims that this problem has been primarily caused by the city's failure to (1) provide adequate culverts and (2) clean existing culverts and ditches.

Plaintiff further asserts that there has been a general lack of equality in providing municipal services to the Indian residents of Winner, not only with respect to drainage but also with street improvements, sewerage facilities, fire hydrants, street lights and sidewalks.

Much of the testimony concerning the drainage problem centered around a water leak in the service line running from Plaintiff's house to the water main. Although the testimony is unclear as to exactly when the leak occurred, the water had filled the ditch on the south side of Iowa Street and had remained there for some time prior to February 14, 1972. On that date, notwithstanding the fact that the repair of such a service line is normally the duty of the property own-er, the General Superintendent of the city agreed to remove the water (which at that time had frozen), and replace the culvert under the Plaintiff's driveway if Mrs. Fire would hire a plumber to repair the service line. The plan was consummated and an 18 inch new culvert was installed in place of the original 15 inch culvert. The evidence further shows that all of the culverts in this portion of the city were changed from 15 inches to 18 inches, and that the ditches are periodically "shaped up", i. e. cleaned and dug out to facilitate flow.

As to the installation and maintenance of street lights, the evidence reflects that the City of Winner in general has one street light per city block, whereas some blocks in Indian Town have three street lights. The evidence further shows that fire hydrants have been installed where necessary and are comparable in number to those placed elsewhere in the city; garbage is collected once a week by the city; the children have a lighted playground; and a housing and redevelopment commission was formed to secure new housing for the residents of "Indian Town".

The remaining areas to which Plaintiff attributes discrimination—street paving, sidewalks and sewerage facilities —although somewhat inferior to other areas of Winner, are improvements associated with property ownership. Any difference, therefore, in the quality of such improvements stems primarily from the difference in the respective landowner's willingness to pay for the property improvements.

The evidence shows that, although repairs to existing hard-surfaced streets are borne by the city's general fund, the property owners pay by special assessment for the initial surfacing and curb and gutter. These facts notwithstanding, the City of Winner has, at its own expense, hard surfaced East Park Street and Iowa Street, oil matted First Street, and has made plans to hard surface Dakota Street.

As to sewerage facilities, the evidence shows that property owners ordinarily

absorb the cost of connection lines to the city trunk line. Nevertheless, the city has made application with Housing and Urban Development (HUD) to provide sewer lines to "Indian Town" residents from the trunk line.

The Court recognizes that many of the aforementioned improvements were instituted subsequent to the commencement of this lawsuit. However, that does not alter the fact that they have been done. In short, while there may have been some neglect on the part of the City of Winner with respect to those improvements normally financed by the city's general fund, namely, adequate culverts and drainage ditches, street lights and fire hydrants, the deficiencies were corrected prior to the trial of this matter and any claim of discrimination based thereon is now moot. Those remaining improvements to which Plaintiff attaches discrimination—street paving, sidewalks and sewerage facilities— are reasonable attributes of property ownership for which the owner must be specially assessed. Nevertheless, the evidence shows that the city has taken it upon itself to remedy many of the deficiencies which the property owners have neglected. As mentioned previously, of all the inhabitants of this portion of Winner, more than 98% rent their homes. Thus, while the Court recognizes that some inferior conditions still persist in these areas, relief exists in another court and may involve the owners of the property and lack of diligence on the part of landlords to comply with the building code.

The Court also recognizes that the drainage in "Indian Town" is not the best due to the terrain. It will never be perfect. Notwithstanding the lack of perfection, there are state laws that deal specifically with the rights and obligations of adjacent landowners and the problem of water drainage. But with respect to the present defendants, there simply is insufficient evidence, in light of circumstances that have transpired subsequent to the inception of this action, to show a concerted effort, to even show carelessness or indifference, on the part of the City of Winner or its officers to deprive Plaintiff of his civil rights because of his race or property.

While it is true, as Plaintiff argues in his brief, that a classification by race is proscribed absent a compelling state interest, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), and that actual intent or motive need not be proved directly, Hawkins v. Town of Shaw, 437 F.2d 1286, 1291–1292 (5th Cir. 1971), when a city recognizes a disparity in providing services to its residents and makes a good faith effort to correct such disparity, as was done in this case, then the municipality has met its constitutional responsibility. The equal protection clause was never intended to be a constitutional command forcing municipalities to assume the responsibilities of landowners for the development of their lands.

One final claim remains. Plaintiff, in his brief, asserts a tort claim for damages in the sum of $12,000.00 plus costs for mental suffering and anguish and for special damages of $8.00 for the loss of Plaintiff's floor rug. However, Plaintiff's amended complaint is deplete of any tort allegations and the damages were not specifically pleaded. As such, they cannot be made a basis for recovery.

But even if Plaintiff had set forth sufficient allegations to substantiate a claim for relief in tort, such claim is derivative of state law. As such, the power of this Court to grant any such requested tort relief necessarily is based upon its pendent jurisdiction, which for the considerations of convenience and fairness to the parties, this Court, as a matter of discretion, would not exercise. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The foregoing constitutes the Court's findings of fact and conclusions of law as required by Rule 52. Defendant shall prepare the necessary orders and judgment.